# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRANCISCO ACEVEDO, JR.,<br>    Plaintiff,<br><br>v.<br><br>DAVID SKLARZ, in his official capacity, A. CHUCK LANDROCHE, in his individual and official capacities, IRENE ZYTKA, in her individual and official capacities, TOWN OF WEST HARTFORD, and JAMES PARIZO, in his individual and official capacities,<br>    Defendants. | CIVIL ACTION NO.<br>3:06cv931 (SRU) |

## ORDER ON MOTIONS FOR RECONSIDERATION

Plaintiff Francisco Acevedo, Jr. ("Acevedo") and defendant James Parizo ("Parizo") have each filed a motion for reconsideration of my oral ruling on the defendants' motion for summary judgment, which I granted in part and denied in part at the motion hearing held on February 26, 2008. Specifically, Parizo seeks reconsideration of my ruling denying summary judgment on all the Fourth Amendment false arrest, false imprisonment, unlawful search and seizure, and malicious prosecution and related state law claims against him. Acevedo seeks reconsideration of my ruling granting summary judgment on all First Amendment, intentional infliction of emotional distress ("IIED"), and malicious prosecution claims against defendant Irene Zytka ("Zytka"). For the reasons stated below, both motions are DENIED.

**I.**     **Standard of Review**

The standard for granting motions for reconsideration is a strict one, meaning they "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the

conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790).

## II. Parizo's Motion for Reconsideration

Parizo seeks reconsideration on the ground that I overlooked controlling authority regarding the offense of Interfering With an Officer, Conn. Gen. Stat. § 53a-167a. Parizo contends that recent Connecticut case law has expanded the range of conduct that is violative of that statute beyond physical resistance or speech that constitutes "fighting words," and therefore Parizo had probable cause to arrest Acevedo. Namely, Parizo contends that Acevedo's filming, in conjunction with his verbal attempts to draw attention to him while Parizo was effecting the arrest of another student, is sufficient to give rise to probable cause that Acevedo was hindering or obstructing Parizo in his duties in violation of the statute. If Parizo did have probable cause to arrest Acevedo it would preclude all of the Fourth Amendment and related state law claims against him.

Parizo relies primarily on two recent Connecticut Supreme Court decisions, *State v. Aloi*, 280 Conn. 824 (2007), and *State v. Silva*, 285 Conn. 447 (2008). Those cases are inapposite to the facts of this case and therefore do not persuade me to alter my ruling as it pertains to Parizo. *Aloi* upheld a conviction for illegal interference with a police officer pursuant to section 53a-

167a where the defendant refused a police officer's request to produce identification made in the course of the officer's legitimate *Terry* investigative stop of him. 280 Conn. at 840-41. The Court reasoned that when a suspect refuses to provide identification in the course of a police investigation it may hamper or delay the progress of that investigation. *Id.* at 834. Relying on that holding, the court in *Silva* upheld a jury verdict against Silva for illegal interference with police officers where the defendant had similarly refused to produce identification at the officers' request after they had witnessed Silva commit several traffic infractions. 285 Conn. at 456-57. Significantly for purposes of this motion, the *Aloi* court limited its holding to the narrow facts of that case:

> Although a refusal to comply with certain other types of lawful police command or orders may provide a basis for prosecution under § 53a-167a, . . . for purposes of this opinion, we need not consider any factual scenario other than the scenario presented by the lawful *Terry* stop in the present case.

*Id.* at 841 n.22 (internal citations omitted).

On an obvious level, because this case does not involve an instance where the subject of a *Terry* investigative stop refused to comply with a police officer's direct request to produce identification, the cases cited by Parizo have no bearing on this case. Even more generally, Connecticut courts most frequently find illegal interference with a police officer where the officer makes a direct request, which the defendant refuses to comply with, and it is that *refusal* that hinders or impedes the course of the investigation of the defendant or the performance of the officer's duties. *See, e.g.*, *State v. Peruta*, 24 Conn. App. 598 (1991) (defendant convicted pursuant to section 53a-167a for refusing to comply with a direct order to move further back from the scene of a fatal automobile accident). Because Acevedo never refused to comply with a

3

request from Parizo, and the pair never directly interacted during the incident in the hallway, those cases are not persuasive.

Parizo asserts that Acevedo was hindering and obstructing him in the performance of his duties by filming and loudly yelling in the midst of a chaotic crowd because it diverted his attention away from N.G., the student he was arresting and guiding back to the principal's office. The pertinent inquiry therefore remains whether Parizo had probable cause – or at the very least arguable probable cause so as to give rise to a claim for qualified immunity – to arrest Acevedo on the basis of his *verbal* conduct in the hallway that day. Parizo does not dispute the characterization of Acevedo's conduct as verbal – Acevedo never attempted to physically impede Parizo's progress by stepping in between him and N.G., nor did Acevedo at any time grab or touch Parizo from behind as he filmed the pair maneuvering through the crowded school hallway. It is uncontested that Acevedo was shouting at Parizo and his fellow classmates that he was taping Parizo and that he was watching Parizo in the belief that he was about to physically strike N.G. Parizo contends that this yelling was enough to distract Parizo and therefore violate the statute prohibiting illegal inference with a police officer.

To survive constitutional scrutiny, verbal conduct may constitute illegal interference with an officer only if it rises to the level of "fighting words," i.e., words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *State v. Williams*, 205 Conn. 456, 473-76 (1987) (quoting *Houston v. Hill*, 482 U.S. 451, 461-62 (1987)). Conduct that "merely questions a police officer's authority or protests his or her action" is excluded. *Id.* at 472.

As I stated at the motion hearing, and as I still believe, there is a genuine issue of material

fact concerning whether Acevedo's words were directed to inciting the crowd to take action against Parizo and thus impede his ability to perform his duties in arresting N.G. The determination whether there was probable cause, or at the very least arguable probable cause, to arrest Acevedo on the basis of his conduct turns on the factual issues (1) what an objectively reasonable officer would believe about the state of the crowd, and (2) Acevedo's intent to incite that crowd at the time Parizo arrested Acevedo. Therefore, summary judgment on the Fourth Amendment and related claims, which all turn on whether probable cause (or at the very least arguable probable cause) existed or not, is inappropriate and Parizo's motion for reconsideration is DENIED.

## II. Acevedo's Motion for Reconsideration

Acevedo has moved for reconsideration of my oral ruling granting summary judgment on all the First Amendment claims, intentional infliction of emotional distress ("IIED"), and malicious prosecution claims against defendant Zytka. Although I would be permitted to deny his motion for reconsideration on the ground that he has not identified any new controlling authority or any clear error in my summary judgment ruling, I will nonetheless briefly address why I choose not to alter my summary judgment ruling and therefore why Acevedo's motion for reconsideration is denied in full.

### A. First Amendment Claim

First, Acevedo contends that I too narrowly construed the line of cases, beginning with *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969), that address the scope of students' speech rights while on school grounds. Acevedo argues that his speech falls within the scope of speech protected by *Tinker* because it was not materially disruptive nor

5

did it substantially interfere with the requirements of appropriate discipline in the school, essentially repeating the same argument that was presented and argued extensively at the motion hearing.

As was recently reaffirmed by the Supreme Court, "students do not 'shed their constitutional rights to freedom of speech or expression at the schoolhouse gate,'" *Morse v. Frederick*, 127 S. Ct. 2618, 2622 (2007) (quoting *Tinker*, 393 U.S. at 506). Nevertheless, the Court also reiterated that "'the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings,'" *id.* (quoting *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986)), "and that the rights of students 'must be applied in light of the special characteristics of the school environment.'" *Id.* (quoting *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)).

In *Tinker*, the Court wrestled with where to draw the line between the "scrupulous protection of Constitutional freedoms of the individual" necessary for fostering enlightened citizenship among school children and the need to affirm the "comprehensive authority of the States and school officials . . . to prescribe and control conduct in the schools." 393 U.S. at 507 (quoting *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 637 (1943)). The Court held that students have the right to express themselves on even controversial subjects anywhere on school grounds so long as they do so "without materially and substantially interfering with the requirements of appropriate discipline in the operation of the school and without colliding with the rights of others." *Id.* at 513 (internal quotation marks and alteration omitted). Student conduct that "materially disrupts classwork or involves substantial disorder or invasion of the rights of others" is not constitutionally protected free speech and school officials may enforce

6

discipline in such a scenario. *Id.*

Taking into account the "special characteristics of the school environment," the key question is whether there is a genuine issue of material fact whether Acevedo's behavior constituted a substantial disruption or a material interference with Zytka's obligation to maintain appropriate discipline and order on school grounds. As I explained in my oral ruling, Zytka was justified in believing Acevedo's conduct represented a substantial disruption and that it was materially interfering with her efforts to regain order in the hallways during a very hectic and incident-filled day. Even construing all disputed facts in favor of Acevedo, namely that: (1) there were no special education students gathered in the vicinity; (2) that the school's hallways are generally loud and crowded in between class periods; (3) that Zytka's voice was elevated above Acevedo's; (4) that there was already an ongoing disturbance caused by the cricket release; (5) that Acevedo's actions did not generate a large crowd; and (6) that Acevedo did not create an additional disturbance when Zytka requested that he stop filming, Acevedo's undisputed conduct still fit into the type of substantially disruptive or materially interfering behavior that school officials are empowered under *Tinker* to stop without violating the student's rights to free speech.

Furthermore, insubordinate speech towards school officials is generally not recognized as protected under the First Amendment. *Posthumus v. Bd. of Educ. of the Mona Shores Public Sch.*, 380 F. Supp. 2d 891, 901 (W.D. Mich. 2005) (citing cases). As Judge Kravitz stated in a recent school grounds First Amendment decision, school officials are faced with the difficult task of "teach[ing] our children to think critically and to object to what they perceive as injustice" while simultaneously "inculcat[ing] the values of civil discourse and respect for the dignity of every person." *Doninger v. Niehoff*, 514 F. Supp. 2d 199, 203 (D. Conn. 2007). Acevedo's

7

rights to exercise his freedom of speech were not unlimited when he was on school grounds and he was certainly expected to maintain a level of decorum and dignity in his interactions with school officials that he failed to display on June 15, 2006. The tone of his voice and argumentative stature against Zytka could foster an atmosphere of disrespect toward school officials that certainly disrupts the educational process and interferes with the need for maintaining an appropriate level of discipline in public schools.

Even if Zytka did violate Acevedo's First Amendment right to free speech, summary judgment would still be appropriate because she is entitled to a qualified immunity defense as a matter of law. *Tinker* established a right for students to exercise *non-disruptive* expression anywhere on school grounds. At some point, however, expressive speech crosses the line into "disruptive" and thus gives way to school officials' ability to maintain order and discipline in an educational environment. The clearly established right is that students may not be punished or stopped from engaging in *non-disruptive* speech. Where that expression may be fairly characterized as "disruptive," however, it crosses into a constitutional gray area in which school officials are reasonable in their belief that they are acting lawfully to put a stop to the disruptive student behavior.

Acevedo's behavior cannot reasonably be characterized as non-disruptive because he was shouting that Parizo had hit, or was about to hit, a student in the midst of an already large and noisy crowd and he responded in a loud, aggressive, and disrespectful manner to Zytka's demand that he stop filming. Because his speech falls into the constitutional gray area between protected and unprotected speech, Acevedo cannot successfully argue that he was engaging in a clearly protected act of expression; Zytka is thus entitled to qualified immunity on this claim.

8

B.      Intentional Infliction of Emotional Distress Claim

Next Acevedo contends that he has a viable IIED claim because Zytka's official statement to the police constitutes extreme and outrageous conduct because it contains false accusations that led to his arrest. This is essentially a reargument of the points he made at the motion hearing.

To succeed on a claim for IIED, a plaintiff must show that: (1) the defendant intended to inflict emotional distress or that she knew or should have known that emotional distress was likely to result from her conduct; (2) that the conduct was extreme and outrageous; (3) that the conduct caused the plaintiff's distress; and (4) that the plaintiff sustained severe emotional distress. *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (Conn. 2000). Outrageous conduct is that which exceeds "all bounds usually tolerated by decent society." *Id.* (quoting *Petyan v. Ellis*, 200 Conn. 243, 254 n.5 (Conn. 1986)). Whether the defendant's conduct rises to the level of extreme or outrageous is initially a matter of law and becomes a question of fact only where reasonable minds could disagree. *See id.*

I granted summary judgment on the ground that Zytka's conduct was not sufficiently outrageous under state law to give rise to a claim for IIED because her statement did not contain any materially false information and essentially reflected her characterization of undisputed events. Merely describing her impressions of the chain of events in the police statement, which contains no materially false statements, does not exceed the bounds tolerated by decent society.[1]

---

[1] Zytka's statement to the West Hartford Police Department reads in its entirety:
At approximately 12:50 on June 16, 2006, I was responding to a disturbance in the hallway. I saw Francisco [Acevedo] pursuing Officer Parizo and another student with a camera in his hand. He was screaming "He hit him." I told him to put the camera away as several students were gathering around us. He then shouted at me

Although Acevedo disputes her characterization of his behavior, the general facts as related in the report are not in serious dispute. Acevedo's conduct clearly warranted some response by school officials, as evidenced by his subsequent suspension from school, the justification for which is not in dispute. Reasonable jurors could not find that Zytka's statements were so patently false and outrageous that they establish a viable claim for IIED, because they merely reflected her version of events that undisputedly occurred. Furthermore, the cases Acevedo cites in his motion for reconsideration are not factually analogous because each of those cases involved instances where the plaintiff was arrested on the *sole* basis of the defendant's proactive and materially false complaints to the police. Here, Acevedo was arrested not only on the basis of Zytka's witness statement, but also on Parizo's own personal interaction with Acevedo. Because Acevedo has not established how he is entitled to assert an IIED claim against Zytka as a matter of law, his motion for reconsideration on this claim is denied.

    C.    <u>Malicious Prosecution</u>

Finally, Acevedo moves for reconsideration of my grant of summary judgment on his Fourth Amendment and state law malicious prosecution claims against Zytka. Acevedo once more merely reiterates the same argument that he made at the motion hearing, namely that Zytka

---

        "No, you can't make me." I told him to go to the office, he refused at first. He did go to the office, but was continuing to shout and scream at me after continual request [sic] from me to calm down.

As much as Acevedo would like to dispute the characterization that he was "shouting" and "screaming," the facts as related by Zytka are not in serious dispute as evidenced by Acevedo's recording that captured much of their exchange and Acevedo's own statements about what occurred after the filming stopped. Therefore, it can hardly be called a *false* accusation. *See Mauzy v. Robinson*, 2006 WL 3691002, at *3-5 (Conn. Super. Ct. 2006) (granting summary judgment on an IIED claim where only the *characterization* of allegedly "false" events was disputed, not that they actually occurred).

is liable for malicious prosecution because her false statement to the police was the sole basis of his subsequent prosecution. Additionally, Acevedo contends that Zytka conspired with Parizo to have Acevedo arrested and prosecuted.

A successful section 1983 claim for malicious prosecution under the Fourth Amendment requires that the plaintiff show: (1) a violation of his rights under the Fourth Amendment, and (2) that he can establish the elements of a malicious prosecution claim under state law. *Galazo v. City of Waterbury*, 303 F. Supp. 2d 213, 218 (D. Conn. 2004) (citing *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002)). Under Connecticut law, a plaintiff must demonstrate the following four elements: (1) that the defendant initiated or procured criminal proceedings against the plaintiff; (2) that the criminal proceedings terminated in the plaintiff's favor; (3) that the defendant acted without probable cause; and (4) that the defendant acted with malice, i.e., for a purpose other than bringing an offender to justice. *Id.* (citing *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)).

"A person is deemed to have initiated a proceeding if his direction or request, or pressure of any kind by him, was the determining factor in the officer's decision to commence the prosecution . . . [or] the defendant's request might reasonably have been found to be the proximate and efficient cause of the arrest." *Zenik v. O'Brien*, 137 Conn. 592, 596 (1951). Where a complaining witness has merely provided potentially incriminating information to the police, he cannot be liable for malicious prosecution. *McHale*, 187 Conn. at 448. "[I]f the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." *Id.* Liability for malicious prosecution can arise against a private citizen, however, where such person has

11

provided knowingly false information.  *Id.* at 449.

The crux of Acevedo's malicious prosecution claim against Zytka revolves around her sworn statement to the police on June 15, 2006.  Based on the undisputed facts, particularly the events captured by the video, her statement contains no knowingly false, material information.  In sum, she states that she was alerted to the disturbance Acevedo was causing, that he resisted her initial request to put the camera away, that he eventually complied with her request to go to her office, but that he continued to shout and scream.  It is not her fault that this statement did not provide probable cause to arrest Acevedo for either interfering with an officer or breach of the peace/disorderly conduct as Parizo later claimed.  Furthermore, Acevedo cannot point to any facts that would indicate that Zytka was pressuring Parizo to arrest him or was otherwise "initiating" criminal proceedings against him.

Acevedo has also failed to allege any facts that tend to show a conspiracy between Zytka and Parizo to have him arrested and prosecuted.  A conspiracy requires an agreement between the two parties.  There is no evidence that would give rise to even an inference that the two agreed to arrest Acevedo and subject him to prosecution.  All Acevedo can show is that both Zytka and Parizo were upset with Acevedo, that they each imposed a form of punishment on him – suspension and arrest, respectively – and that it happened at or about the same time.  Therefore, on the basis of the evidence on the record Acevedo's claim for malicious prosecution against Zytka, both directly and by way of a conspiracy, must fail as a matter of law and his motion for reconsideration on this claim is also denied.

## III. Conclusion

For the foregoing reasons, Parizo's motion for reconsideration (**Doc. # 52**) and Acevedo's motion for reconsideration (**Doc. # 53**) are **DENIED**.

It is so ordered.

Dated at Bridgeport, Connecticut this 16th day of May 2008.

                                              /s/ Stefan R. Underhill
                                                  Stefan R. Underhill
                                                  United States District Judge